UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA GUZMAN,<br><br>        Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | NO. CV 04-10549 FMO<br><br>**ORDER RE:  MOTIONS FOR SUMMARY JUDGMENT** |

## **PROCEEDINGS**

Plaintiff filed a Complaint on February 1, 2005, seeking review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. § 405(g) ("Act").  Thereafter, the parties consented to proceed before the undersigned United States Magistrate Judge.

On December 15, 2005, plaintiff filed a Motion for Summary Judgment ("Plaintiff's Motion"). Subsequently, on January 12, 2006, defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion ("Defendant's Cross-Motion").  Plaintiff did not file a Reply brief.

The court has taken both motions under submission without oral argument.  For the reasons set forth below, Plaintiff's Motion is granted and the decision of the Commissioner denying benefits is reversed.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To be eligible for disability benefits, a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

Disability claims are evaluated using a five-step test:

Step one:   Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two:   Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined to be disabled. If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. § 416.920; Tackett, 180 F.3d at 1098-99. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. 20 C.F.R. § 404.1520; Tackett, 180 F.3d at 1098.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, who was 51 years of age on the date of the administrative hearing, has a ninth grade education and limited English skills. (Administrative Record ("AR") at 17, 106 & 223-24). Her past relevant employment includes work as a machine operator. (Id. at 17, 101, 109-13 & 129).

Plaintiff protectively filed for DIB and SSI on May 15, 2002, alleging that she has been disabled since January 31, 1995, due to herniated discs, pain from her calves to her neck, numbness in her legs, and difficulties in walking, standing, and sitting. (AR at 16, 63-65, 96, 100 & 215-17). Her application was denied initially and on reconsideration. (Id. at 16, 42-45 & 51-54).

On April 13, 2004, plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Id. at 16, 23 & 219-21). The ALJ also heard testimony from Dr. Joseph E. Jensen, a medical expert, and Alan L. Ey, a vocational expert ("VE"). (Id. at 16, 31, 33 & 219-21). An interpreter was present to assist plaintiff at the hearing. (Id. at 16, 219 & 221).

The ALJ denied plaintiff's request for DIB and SSI on April 28, 2004. (AR at 5 & 13-22). Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (Id. at 17 & 21). At step two, the ALJ found that plaintiff suffers from severe medical impairments, consisting of "cervical strain with some degenerative disc disease, [and] herniated disc at L2-3 with some evidence of peripheral neuropathy." (Id. at 19 & 21). At step three, the ALJ determined that plaintiff's impairments, either individually or in combination, do not meet or equal the severity of any listing set forth in the Social Security regulations.[1] (Id.).

The ALJ then assessed plaintiff's residual functional capacity[2] ("RFC"). (AR at 19 & 21). Specifically, the ALJ found that plaintiff retains the RFC to "perform a significant range of light work," including the ability to "stand and walk 6 hours in an 8 hour day, [and] sit without restriction," as well as "lift and carry 20 pounds occasionally, [and lift and carry] 10 pounds frequently." (Id.). The ALJ further noted that plaintiff "can occasionally climb stairs, bend, stoop, and crouch," "can frequently balance, kneel and crawl," "can do frequent fine and gross manipulation," and "can do frequent reaching and feeling, but only occasional over shoulder reaching." (Id.). Finally, the ALJ found that plaintiff "should not climb ladders or scaffolds" and "should avoid vibrations." (Id.). Based on this RFC and the testimony of the VE, the ALJ determined at step four that plaintiff could not perform her past relevant work. (Id. at 20-21).

---

[1] See 20 C.F.R. Pt 404, Subpt. P, App. 1.

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

3

At step five, the ALJ determined that plaintiff is an individual "closely approaching advanced age," has a ninth grade education, and has no transferable skills from any past relevant work. (AR at 20-21). Using the Medical Vocational Guidelines "as a framework for decisionmaking," the ALJ determined that "a finding of 'not disabled' is indicated." (Id. at 20). The ALJ further noted that based on the Medical Vocational Guidelines and the VE's testimony, plaintiff retained the capacity to perform "a significant number of jobs existing in the national economy," including bench assembler, assembler II, and wire worker. (Id. at 20-22). Accordingly, the ALJ concluded that plaintiff was not suffering from a disability as defined by the Act. (Id. at 17, 20 & 22).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 5-8 & 11). The ALJ's decision stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision must be upheld if they are free of legal error and supported by substantial evidence. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." Aukland, 257 F.3d at 1035. It is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); see also Mayes, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." Mayes, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Aukland, 257 F.3d at 1035 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the

ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" Id. (quoting Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)).

## DISCUSSION

I.   THE ALJ ERRED IN FAILING TO PROPERLY EVALUATE PLAINTIFF'S OBESITY.

Plaintiff contends that the ALJ erred by failing to properly evaluate the effects of her obesity on her ability to work and on her other impairments. (Plaintiff's Motion at 2-4). For example, plaintiff argues that the ALJ "failed to consider any of the limitations of functioning that could reasonably be effected by her obesity such as sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, crouching, [and] manipulating, as well as the ability to tolerate extreme heat, humidity, or hazards." (Id. at 4). Plaintiff further asserts that the ALJ did not "address or even discuss the [p]laintiff's obesity in her decision." (Id. at 2).

At the administrative hearing before the ALJ, plaintiff testified that she was 5'1" tall and weighed 188 pounds. (AR at 232). In addition to this testimony, there are several references in the medical records regarding plaintiff's weight and height, which were consistently measured at 190 pounds and 5'1", respectively.[3] (See, e.g., id. at 176, 187 & 200-01). There are also notations in the medical records referring to plaintiff as "heavy," (id. at 176 & 187), and "obese," (id. at 170: "This report is about [a] 50 year old female with obesity level III of III" & 198: "Problems: (1) obesity"). Further, a Physical Residual Functional Capacity Assessment completed by a state agency physician on November 4, 2002, listed obesity as a secondary diagnosis, (id. at 160), and defendant concedes that "[t]he State Agency disability evaluators noted that a secondary diagnosis of obesity was supported by the medical records," (Defendant's Cross-Motion at 3) (citing AR at 213-14)). Despite these medical records and statements, however, the ALJ did not mention obesity at any point in her decision denying plaintiff DIB and SSI benefits. (See id. at 16-22).

---

[3] Defendant cites to two separate medical records where it was noted that plaintiff weighed 175 pounds and 181 pounds. (Defendant's Cross-Motion at 4-5) (citing AR at 137 & 151). These medical records, however, are dated 1996 and 2002, and are not consistent with more the recent medical records from 2003, which indicate that plaintiff weighed 190 pounds. (See AR at 176 & 200-01).

5

The Social Security Administration ("SSA") delisted obesity from the Listing of Impairments in October 1999, but added language to the regulation that instructed ALJs of the continued role of obesity in disability evaluations. See Social Security Ruling ("SSR") 02-01p,[4] 2000 WL 628049 at *1. The SSA issued SSR 02-01p, 2000 WL 628049, which recognizes "that the combined effects of obesity with other impairments may be greater than the effects of each of the impairments considered separately" and that adjudicators must consider obesity under all steps of the disability analysis, "including when assessing an individual's residual functional capacity." Id..

Because there is no listing for obesity, "an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing." SSR 02-01p, 2000 WL 628049 at *5. Equivalence is also found "if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." Id. For example, obesity may increase the severity of coexisting or related musculoskeletal impairments to the extent that the combination of impairments meet the requirements of a listing. Id. Similarly, obesity "is often associated with disturbance of the respiratory system." 20 C.F.R. Pt 404, Subpt. P, App. 1, Listing 3.00I; see also SSR 02-01p, 2000 WL 628049 at *5. In addition, obese persons may have limitations in exertional, posturing, and manipulative functions. SSR 02-01p, 2000 WL 628049 at *6.

Here, as stated above, the ALJ did not consider the combination or impact of plaintiff's obesity at various stages of the disability determination process. See Stack v. Barnhart, 327 F.Supp.2d 1175, 1179 (C.D. Cal. 2004) ("The ALJ had a duty to assess the impact of Plaintiff's undisputed obesity on the various steps of the sequential evaluation process."). For example,

---

[4] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

there is no indication that the ALJ considered the impact of plaintiff's obesity when she made her step two determination. The step-two inquiry is defined as "'a de minimis screening device to dispose of groundless claims.'" Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). "At step two of the five-step sequential inquiry, the Commissioner determines whether [a] claimant has a medically severe impairment." Smolen, 80 F.3d at 1289. "Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on [his] ability to function, without regard to whether each alone was sufficiently severe." Smolen, 80 F.3d at 1290.

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"[5] Smolen, 80 F.3d at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." Webb v. Barnhart, 2005 WL 3544685 at *3 (9th Cir. Dec. 29, 2005) (internal quotation marks omitted). In addition, "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." Id.

Here, the court is persuaded that plaintiff submitted sufficient medical evidence establishing that her obesity was severe, i.e., the record of plaintiff's persistent obesity was sufficient to pass the de minimis threshold at step two. See Webb, 2005 WL 3544685 at *3 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."). As noted above, the medical record indicates that plaintiff has had a persistent problem with obesity. See supra at 5.

---

[5] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." Edlund, 253 F.3d at 1159 (internal citations omitted).

7

Given the evidence establishing plaintiff's obesity as a severe condition, the ALJ was obligated to consider plaintiff's obesity in analyzing plaintiff's ability to work. Although none of plaintiff's impairments may, on their own, meet or equal any Listing, the ALJ was still required to evaluate whether the cumulative effect of her impairments, including obesity, impacts the disability determination at step three. SSR 02-01p, 2000 WL 628049 at *5 ("We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment."). The Commissioner must compare the corresponding medical criteria of a listed impairment with the "symptoms, signs, and laboratory findings" of the claimant's impairments as shown in the recorded medical evidence. 20 C.F.R. § 416.926(a)-(b); see also Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (ALJ must consider the combination of impairments at step three). There is no indication that any such determination was made at step three in the present case. (See AR at 16-22).

Furthermore, even assuming, arguendo, that plaintiff's obesity condition is not severe, the ALJ erred by not considering the impact of obesity on plaintiff's other impairments, both severe and non severe, and its effect on her ability to work. See Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) ("The ALJ was responsible for determining the effect of [plaintiff's] obesity upon her other impairments, and its effect on her ability to work and general health, given the presence of those impairments."). In assessing a claimant's RFC, the ALJ is required to assess the "effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-01p, 2000 WL 628049 at *6. As the SSA noted in SSR 02-01p:

> Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p, our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect

>the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
>The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

Id. (internal citations and footnote omitted).

Here, plaintiff testified that she was 5'1" tall and weighed 188 pounds and that she had back problems which prevented her from working and doing chores around her home. (See AR at 232 & 243). The ALJ found that plaintiff's back problems constituted a severe impairment. (See id. at 19 & 21). Given the potential effect of obesity on plaintiff's back condition, the ALJ had a responsibility to consider the interactive effect between plaintiff's obesity and plaintiff's other impairments. "The ALJ was responsible for determining the effect of [plaintiff's] obesity upon her other impairments, and its effect on her ability to work and general health, given the presence of those impairments." Celaya, 332 F.3d at 1182. Here, the ALJ did not consider the effect of plaintiff's weight on her ability to sustain work activity. Nor did the ALJ consider the effect of plaintiff's obesity on plaintiff's severe and non-severe impairments to determine whether it affected her ability to perform routine and physical activities on a sustained basis. (See AR at 16-22).

Further, to the extent that the medical providers failed to enumerate specific limitations caused by plaintiff's obesity, the ALJ should have contacted them to obtain such information rather than dismissing the condition as not severe, particularly where, as here, plaintiff has language and educational barriers which may have affected her ability to communicate effectively at the administrative hearing and with her medical providers. See Webb, 2005 WL 354685 at *3(an "ALJ ha[s] an affirmative duty to supplement [plaintiff's] medical record, to the extent it was incomplete, before rejecting [plaintiff's] petition at so early a stage in the analysis"); see also Karp v. Schweiker, 539 F.Supp. 217, 220 (N.D. Cal. 1982) ("The Social Security Act specifically provides for consideration of the claimant's . . . education . . . in determining eligibility for disability payments under the Act. This circuit has held that failure to consider language barriers in

conjunction with the claimant's physical problems is an error of law, even in cases where those physical problems do not themselves amount to a disability as defined by the Act.") (internal citations omitted)).

Finally, defendant's argument that the ALJ properly evaluated plaintiff's obesity because "obesity as a medical impairment was before the ALJ for [her] consideration throughout the sequential evaluation," (Defendant's Cross-Motion at 3), is unpersuasive.  Given that there was no discussion of plaintiff's obesity in the ALJ's decision, defendant's argument begs the question as to whether plaintiff submitted enough evidence to establish obesity as an impairment and/or whether it should have been considered in analyzing plaintiff's ability to work.  In any event, the court's review is limited to the reasons actually cited by the ALJ in her decision, and here, the ALJ failed to discuss obesity at any point throughout the decision.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); Bunnell, 947 F.2d at 346 ("a reviewing court should not be forced to speculate as to the grounds for an adjudicator's [decision]").

II.     REMAND IS REQUIRED.

The court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Harmon v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628 (2000).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence where properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 595-96; Harmon, 211 F.3d at 1179-80.

Under the circumstances here, the court is persuaded that the ALJ's decision is fatally flawed by her apparent lack of consideration of plaintiff's obesity throughout the disability evaluation process.  See Stack, 327 F.Supp.2d at 1179 ("The ALJ had a duty to assess the impact of Plaintiff's undisputed obesity on the various steps of the sequential evaluation

10

process."). On remand, the ALJ must consider plaintiff's obesity in reassessing steps three, four, and, if necessary, step five.[6]

The court does not intend this decision for publication.

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment **(Document No. 28)** is **granted** for the reasons enumerated above.

2. Defendant's Cross-Motion for Summary Judgment **(Document No. 29)** is **denied**.

3. Judgment shall be entered **reversing** the decision of the Commissioner denying benefits and **remanding** the matter for further administrative action consistent with this decision.

Dated this 27th day of January, 2006.

/s/
Fernando M. Olguin
United States Magistrate Judge

---

[6] Because the court concludes that the ALJ did not properly evaluate plaintiff's obesity, it declines to address plaintiff's remaining contention that the ALJ erred by failing to offer clear and convincing reasons for rejecting plaintiff's subjective symptom testimony. (See Plaintiff's Motion at 4-5). The parties, however, shall not be precluded from addressing that issue or any other issue on remand.